UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>  v.<br><br>JACOB COOPER,<br><br>    Defendant. | Case No. 19-cr-286 (ABJ) |

MEMORANDUM IN AID OF SENTENCING

  Mr. Jacob Cooper respectfully submits that a sentence of 175 days incarceration with credit for time served is just, fair, and reasonable.

## Background

Caring, thoughtful, selfless—all words used to describe Jacob Cooper by those that know him the best. It is difficult to reconcile the loving son and brother that Mr. Cooper's family knows him as with the person making posts on iFunny.co. Indeed, it is difficult for Mr. Cooper to reconcile this himself. What began as a teenager posting satirical content in order to get attention has led to one of Mr. Cooper's most regretful decisions. A decision that has cost him the last six months of his life—and at barely twenty years old will brand him a felon for the rest of it.

Growing up with a single mother and two other siblings was difficult for Mr. Cooper's family. Mr. Cooper remembers being evicted every year around the beginning of the school year because the expenses were just too much for his mother. This would render him homeless during critical times in his education every school year. Although they would suffer financial hardships, it was not due to a lack of effort on his mother's part. She worked numerous jobs. This, however, added to the problems in Mr. Cooper's life as he would go long periods of time where he would only see his mother before going to school and right before going to bed.

Mr. Cooper's childhood was further affected by a diagnosis of Attention Deficit Hyperactivity Disorder (ADHD). Then at the age of ten years old, his father was in a devastating car accident that left him with severe brain damage. Although Mr. Cooper did not have much of a relationship with his father, this left him deeply traumatized. The little relationship that was there would cease to exist.

As a result of the trauma of the accident, Mr. Cooper began battling bouts of depression. He would continue to battle depression in the years to come. This affected his life in many ways, as a lack of resources left him without an understanding of what was happening until he was much older.

Despite battling depression and a traumatizing childhood, Mr. Cooper has managed to keep a positive attitude towards life. He graduated high school, was the first one of his siblings to find a job, and continues to be very connected to his family.

Mr. Cooper has made poor decisions with his online persona. The consequences of his actions will forever follow him. This is not lost on Mr. Cooper. He understands that it will not be easy, but he is determined on starting anew and getting his life back on track. Mr. Cooper is excited about returning home to his family and going back to school to follow his dream of becoming a video game designer.

A sentence of 175 days incarceration, in this case, is a sentence that is sufficient but not greater than necessary. It is a sentence that will remind Mr. Cooper of the life lessons he has learned during the last six months. It is a sentence that would allow Mr. Cooper to return to the family that is standing by waiting for him to support him in any way they can. It is a sentence that would allow Mr. Cooper to put this behind him, and get started on the long path back to becoming a productive member of society.

## Sentencing Legal Framework

In sentencing, the "Court's overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'" *Pepper v. United States*, 562 U.S. 476, 493 (2011) (quoting 18 U.S.C. § 3553(a)), to comply with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation," *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2).

In determining such a sentence, the sentencing court must consider the United States Sentencing Guidelines, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to serve the purposes of sentencing, the kinds of sentences available, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense. *Id.* § 3553(a)(1). In addition, the sentencing court may consider any "information concerning the background, character, and conduct" of the defendant, including age, educational and vocational skills, mental and emotional conditions, and lack of guidance as a youth. *Id.* § 3661.

Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is *not* an appropriate means of promoting correction and rehabilitation.

18 U.S.C. § 3582(a) (emphasis added). With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]." *Id.* § 3553(a) (emphasis added).

## Argument

Mr. Cooper is a first time offender whose conduct is, at least in part, attributed to his youth. He was just a teenager less than a month before the offense. As a result of this, Mr. Cooper now has a federal felony conviction and is subject to all of the collateral consequences that accompany it. The government's forum choice is particularly significant in this case. Not only did the government insist on bringing this case in D.C. despite the offense happening in Tennessee, the government also brought the claims in federal court, rather than D.C. Superior Court. In Superior Court, Mr. Cooper would be eligible for a Youth Act sentence, which recognizes that a person under 24 years old should be treated differently than a similarly-situated mature adult. *See* D.C. Code §§ 24-901, 24-903. The result was that Mr. Cooper spent the last six months locked in a jail, hundreds of miles away from his family, in a city that he had never stepped foot in—and at only 20 years old was denied the benefit of a Youth Act sentence.

### A. The Offense Constitutes One Instance of Little or No Deliberation

Here, the United States Sentencing Guidelines call for a base offense level of 12 as a starting point. *See* § 2A6.1(a)(1). However, when "the offense involved a single instance evidencing little or no deliberation," and no other specific

5

characteristics apply, the base offense level shall be decreased by 4 levels. *See* § 2A6.1(b)(6). The government concedes that no other specific characteristics apply. The application notes make clear that when considering conduct that occurred prior to the offense, the conduct "must be *substantially and directly connected* to the offense. . . ." § 2A6.1, comment. (n.1) (emphasis added). Although the note references other subsections, it is informative of the type of conduct that should be considered when determining whether the offense should be categorized as a single instance.

Courts acknowledge that the language of § 2A6.1(b)(6) suggests a reduction when the offense is "the product of a single impulse, or are a single thoughtless response to a particular event" *United States v. Sanders*, 41 F.3d 480, 484 (9th Cir. 1994). When courts have rejected the reduction, it is the result of multiple *charged* threats, or if they are not charged, they are substantially related to the charged offense. *See United States v. Edgin*, 92 F.3d 1044 (10th Cir. 1996) (Defendant made a subsequent uncharged threat to the same victim); *United States v. Freeman*, 176 F.3d 757 (1st Cir. 1999) (Defendant made multiple phone calls to the same hotline).

Mr. Cooper is charged in a single count indictment for making a single threat. With mere taps on his phone, the offense was completed. The threat in this case was an impulsive response to a person that was "trolling" users on the website. There is no evidence that this offense was more than a thoughtless response to the other person. Although Mr. Cooper has in the past expressed his views on abortion, there are no allegations that there was any additional threatening conduct beyond

6

the reply to an anonymous person online. Simply expressing his views on a topic months before cannot possibly be turned into deliberation for something that was clearly an impulsive reply to a person that was seeking such a reaction.

The government relies heavily on extraneous conduct. Specifically, they point to a post referencing the FBI. The content of this post was not created by Mr. Cooper, but was simply republished. Mr. Cooper was never charged with republishing this post. This post is in no way connected to the charged offense, nor does it make any mention of abortion or Planned Parenthood. It only references law enforcement agencies. There is no connection whatsoever between the two. Therefore, it should not be used to deny the reduction in this case.

The fact remains that what is charged here is a single instance evidencing no deliberation. The offense was completed in a matter of seconds.

### B. Mr. Cooper's History and Characteristics

As explained earlier, Mr. Cooper comes before the Court without any prior criminal history. Despite the trauma and depression in his life, he has fought through. He graduated high school, maintained employment to support himself and his family, and remains a caring person to those around him.

Mr. Cooper's brother, Blake, tells a story that exemplifies just how caring he is. As a Walmart employee, Mr. Cooper worked as a grocery pickup attendant. Mr. Cooper was responsible for bringing out groceries to customers. One day a customer was picking up party supplies, and there were items missing. The customer told Mr. Cooper that the party was now ruined. At the time it was not possible for Mr.

Cooper to rectify this. His brother explains how that night Mr. Cooper bared the burden and regret of not being able to help that person. Even though this was a common accident at Walmart, Mr. Cooper took it as a "personal failure."

Mr. Cooper is very remorseful for his actions. He realizes the price that he will pay for what is a very regretful decision. However, he is more determined than ever to move his life forward. Most of all, he is excited about returning to his family, school, and work. Mr. Cooper should be allowed to start getting his life back on track and should not be sentenced to any additional period of incarceration.

## Conclusion

For the foregoing reasons, and such other reasons as may be presented at the sentencing hearing, Mr. Cooper respectfully requests that the Court impose a sentence of 175 days with credit for time served. Mr. Cooper has already spent six months incarcerated. Additional incarceration, in this case, does nothing to further the ends of justice.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


*/s/*
Jose A. German
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500